UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY BOYD, | ) |
| | ) |
| Plaintiff, | ) No. 09 C 1217 |
| | ) |
| v. | ) Magistrate Judge Schenkier |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gregory Boyd, brought this action pursuant to 42 U.S.C. § 405(g) (2008) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff applied for DIB on November 7, 2005 for benefits beginning November 1, 1997 (Record ("R.") 10). To qualify for disability benefits, Mr. Boyd was required to show disability on or before his last date insured, which was December 31, 2002 (R. 39).

Mr. Boyd's initial claim was denied on January 20, 2006 (R. 39, 41). The claim was denied upon rehearing on July 31, 2006 (R. 48). Mr. Boyd then requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on December 4, 2007 (R. 17, 53). Mr. Boyd and his wife, Denise Boyd, appeared with counsel and testified; Pamela Tucker, a vocational expert ("VE") and Ashok Jilhewar, a medical expert ("ME") also testified (R. 17). After the hearing, the ALJ received medical records from Dr. Jayantibha Patel, who treated plaintiff prior to his last date insured (R. 273).

On September 25, 2008, based on hearing and post-hearing medical evidence, the ALJ issued a written decision, denying Mr. Boyd DIB based on her determination that he did not have a disability during the relevant time period (R. 10-16). Mr. Boyd requested review of the decision and, on January 9, 2009, the Appeals Council affirmed the ALJ's finding that the plaintiff was not disabled, making the ALJ's decision denying DIB final (R. 1, 5). *See also* 20 C.F.R. § 422.210(a) (2009). Mr. Boyd then initiated this civil action for judicial review of the Commissioner's final decision.

By consent of the parties and pursuant to 28 U.S.C. § 636(c)), the case was assigned to this court for all proceedings, including the entry of final judgment (doc. # 12, 14). Pending before the Court are plaintiff's motion for summary judgment seeking reversal and remand (doc. # 19), and defendant's request that the Commissioner's determination be affirmed (doc. # 22). For the following reasons, we deny plaintiff's motion for summary judgment, and we affirm the Commissioner's final decision.

## I.

We begin with a summary of the relevant portions of the record.

### A.

Plaintiff was born on March 26, 1947 and is married to Denise Boyd (R. 25, 40). Plaintiff graduated from high school and has taken some college courses, but he does not have a college degree (R. 20). Mr. Boyd worked for the Chicago Transit Authority ("CTA") as a bus operator for more than 28 years before leaving his job in 1997 (R. 22, 23). As an operator, Mr. Boyd drove a bus, occasionally lifted people, bags and strollers into the bus and occasionally did maintenance on the bus (R. 24-25).

Mr. Boyd was diagnosed with diabetes in 1991 (R. 216). From 1996 to 2005, plaintiff was in treatment with Dr. Patel of Holy Cross Hospital (R. 275-335). In 1996, Mr. Boyd weighed 240 pounds and had an elevated glucose fasting level of 133 mg/dl, when a normal range was 70-110 mg/dl (R. 274, 322, 328). On December 6, 1997, shortly after the alleged onset disability date of November 7, 1997, plaintiff had no complaints during an outpatient check-up (R. 283). On July 1, 1998, plaintiff complained that he had experienced a headache lasting two weeks; his weight was noted at 224 pounds (R. 278). On June 3, 1999, Mr. Boyd was diagnosed with erectile dysfunction (R. 288). On July 15, 2000, Mr. Boyd's glucose level was 178 mg/dl and two weeks later, on July 31, 2000, he complained of fatigue and tiredness upon exertion (R. 285, 317, 320). On December 14, 2002, plaintiff was diagnosed with scrotal abscess and the site was drained (R. 304-305, 310, 312-315). At the time of the procedure, which was less than three weeks before the last insured date, plaintiff's motor, sensory and gait all were assessed as normal (R. 304). Between 1996 and 2002, which encompasses the alleged disability period, Mr. Boyd reported one instance of right shoulder pain and stiffness, and one report of tingling in the fingers (R. 282, 285). Beyond that, he reported no problems with his vision, shoulder, feet or motor functioning (R. 282, 285).

In April 2003, after plaintiff's date last insured, he was seen for pain in his right shoulder, but he had no motor weakness and his glucose level was at 252 mg/dl (R. 303). That December, during an outpatient checkup, Mr. Boyd denied he had blurry vision and was assessed to have a normal gait, motor examination and sensory examination (R. 298-300).

3

As of March 2005, Mr. Boyd's diabetes was not controlled (R. 29). In October 2005, plaintiff was treated with physical therapy for a frozen shoulder (R. 30). On January 23, 2006, a doctor noted that the plaintiff had an elevated fasting blood sugar level and right shoulder pain with swelling, tenderness and limitation of movement (R. 216-17). Mr. Boyd's health continued to worsen and on May 1, 2007, he was diagnosed with hyperbilirubinemia, diabetes, hypertension, obesity and glaucoma (with a history of cataract surgery) (R. 220-450). On May 11, 2007, the plaintiff underwent an abdominal aorta aniogram to embolize to pseudoaneurysms of the right hepatic artery (R. 355-356). On June 27, 2007, plaintiff's physician noted high blood pressure at 128/82, as well as fatigue, vision headaches, dizzy ears, nocturia, joint muscle pain, stiffness, weakness and cramps, burning in both feet and right upper arm pain (R. 240-41, 246, 254). By the date of the DIB hearing, the plaintiff experienced uncontrolled diabetes, a frozen right shoulder, pain in his left shoulder, high blood pressure, neuropathy in his feet and very poor vision; he also required a liver transplant (R. 21).

## B.

At the administrative hearing held on December 4, 2007, the ALJ reviewed the medical evidence summarized above and heard testimony from Mr. Boyd, his wife, a medical expert and a vocational expert.

## 1.

In his testimony, Mr. Boyd claimed that during his period of employment with the CTA he experienced numbness in his legs and feet (R. 21-23). Mr. Boyd stated that the numbness required him to use an illegal "two foot drive" method, in which he used both feet to operate the pedals of the bus (R. 24). Plaintiff claims that the CTA took him off of

4

bus operating duties because he did poorly on a vision examination (R. 23). Before leaving the CTA, Mr. Boyd worked briefly as a "box puller." However, he was unable to do the necessary lifting required by the job (R. 22).[1] Mr. Boyd noted that, after leaving the CTA, he applied for a job at JC Penney's, but he was not hired due to his diabetes (R. 23).

Ms. Boyd testified that although plaintiff followed diet and medicine instructions, his diabetes was not controlled during the relevant period (R. 26). After ceasing work in 1997, Mr. Boyd also stopped driving at night because of his vision problems (R. 26). After leaving the CTA, Mr. Boyd's health progressively worsened (R. 26). After leaving his job in 1997, the plaintiff spent most of his time at his home, occasionally cooking (R. 27). Ms. Boyd testified that he was unable to leave the house much because he experienced tingling and burning in his feet (R. 27).

**2.**

The ALJ next elicited testimony from the experts, beginning with Dr. Jilhewar, a medical expert. At the outset, Dr. Jilhewar testified that he had reviewed the medical file; but, as of the hearing date, the file contained no records earlier than March 2005 (R. 28) – more than seven years after the alleged onset date of November 1, 1997 and more than two years after the last insured date of December 31, 2002. Dr. Jilhewar stated that this absence of evidence was significant, because it left him with only what he considered the unreliable memory of the Boyds about plaintiff's health many years earlier: "I myself cannot recall anything specific about my health five years prior, so how do I

---

[1]A box puller removes the 100 to 125 pound change box from a bus when it returns to the garage (R. 22).

5

expect somebody else [to do so], and I am [a] physician myself" (*Id.*). Dr. Jilhewar testified about plaintiff's medical history beginning in March 2005, which was the earliest date on which medical records were available (*Id.* at 29-32). Dr. Jilhewar noted plaintiff's decline in health after March 2005, as reflected by uncontrolled diabetes, high blood pressure, joint pain and liver inflammation. But, Dr. Jilhewar said that he could not relate that medical condition back to the 2002 time frame or earlier (*Id.* at 32). Dr. Jilhewar testified that based on the medical records available to him, he considered plaintiff had the residual functional capacity ("RFC") to perform medium work until January 23, 2006 (*Id.* ).

Plaintiff's attorney then asked Dr. Jilhewar whether diabetes has a natural progression that would provide him with some indication, looking back from 2005, of plaintiff's RFC in 2002 (R. 33). Dr. Jilhewar testified that diabetes does not have a natural or predictable progress:

> [E]ach individual has a different progress. I have some patients with no complications with 30 years of diabetes and I have other patients with 5 years of diabetes with a serious complication, so I cannot predict what class . . . what was the status prior to that without [the] objective record"

(*Id.*). Plaintiff's attorney then suggested that he would supply additional records to the ALJ for the time period ending with 2002 after the hearing, and, he asked Dr. Jilhewar what information in those additional records "would corroborate an RFC of say light [work] back in 2002" (*Id.*). Dr. Jilhewar said that it would be important to look for evidence of motor weakness, with a strength of "less than four," and neuropathy "with a pain of more than seven or eight consistently" (*Id.* at 33-34). Dr. Jilhewar stated that

6

neuropathy has no effect on a person's RFC unless it is accompanied by motor weakness or pain (*Id.* at 33).

The VE, Pamela Tucker, classified the job of bus operator as medium in physical demand and semi-skilled, explaining that the skills would not be transferable to light or sedentary work (R. 34). She noted that an individual who could engage in light work would be unable to work as a bus operator (R. 36).

At the conclusion of the hearing, the ALJ informed plaintiff's attorney that once she received the additional medical evidence that plaintiff would supply for earlier time periods, "I will take a look at everything and I will get a decision to you all as soon as possible" (R. 38). In response, plaintiff's attorney said, "[o]kay" (*Id.*). Plaintiff's counsel did not ask that the ALJ tender those additional records to a medical expert.

By a cover letter dated December 10, 2007, plaintiff's attorney submitted additional medical records from Dr. Jayantibhai Patel covering a time period from September 20, 1995 through July 28, 2007 (R. 271-335). Thereafter, in a letter dated March 7, 2008, plaintiff's attorney acknowledged that the treatment notes were difficult to read, but argued that they reflected evidence of a history or diabetes (based on an emergency room visit in January 1996), headaches and a need for weight reduction as of July 1998, fatigue as of October 2000, and a prescription in January 2001 for medication to treat Type II Diabetes (*Id.* at 155). The letter did not ask the ALJ to enlist the assistance of a medical expert in reviewing those additional records.

## II.

In order to establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any

7

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

A claimant must progress through a five-step process in order to qualify for disabilities benefits under the Social Security Act. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairments listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform relevant past work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding of disability. *Young*, 957 F.2d at 389. The claimant bears the burden of proof at Steps 1 through 4, after which the burden shifts to the Commissioner at Step 5. *Id.* In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). If a person can still do this type of work, then, at Step 4, the Commissioner will find that the person is not disabled.

8

The ALJ determined that the plaintiff satisfied Step 1, because he had not engaged in substantial gainful activity during the period from his alleged onset to his date of last insured (R. 12). However, the ALJ determined that plaintiff failed to satisfy Step 2, finding that between the alleged onset date of November 1, 1997 and the last date insured of December 31, 2002, plaintiff did not have a severe impairment or combination of impairments (R. 12 (citing 20 C.F.R. § 404.1521)). To make that determination, the ALJ followed the two-step process required by 20 C.F.R. § 404.1529.

*First,* she found that during the period of claimed disability, plaintiff had an underlying medically determinable physical impairment – diabetes – that could reasonably be expected to produce the claimant's pain or other symptoms (R. 14). *Second,* the ALJ evaluated the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limited his ability to do basic work activities. The ALJ found that there was no medical evidence of any significant complications from diabetes at any time on or prior to the date plaintiff was last insured (R. 14). In making that finding, the ALJ relied upon the opinions of State medical consultants, a medical expert, and post-hearing evidence submitted by the plaintiff (R. 13). Based on the evidence, the ALJ determined that the severity of plaintiff's medical problems reflected in the medical records beginning in 2005, when he filed for disability benefits, was not present between November 1, 1997 and December 31, 2002 (R. 13-14). For example, the ALJ noted that there was no change in plaintiff's diabetes medication until 2005 and that, even as of 2005, there were no medical reports indicating that plaintiff experienced problems with vision, balance, motor weakness, neuropathy that

9

affected gait, station, dexterity or motor function, or burning pain or numbness in his feet (*Id.* at 14-15).

The ALJ considered the plaintiff's testimony and the testimony of his wife, but found that, during the period in question, the medical evidence did not substantiate Mr. Boyd's claims that he had numbness in his feet, impairments of vision or hearing, or pain in his right shoulder (R. 13-14). Instead, the ALJ cited medical examinations during the relevant time period in which the plaintiff reported "feeling okay," with one complaint of pain and stiffness in June 1999 that was not repeated again until 2003 (R. 15).

Because the ALJ determined that the plaintiff did not have a severe impairment during the time between the alleged onset date and his date of last insured, her analysis ended at Step 2, and she did not address the remaining three steps (R. 15-16). Disability benefits were denied (R. 16).

### III.

In reviewing the ALJ's decision, the court may not decide facts anew, reweigh evidence or substitute its own judgment for that of the ALJ. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court must accept the findings of fact that are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). When conflicting evidence allows reasonable minds to differ, the responsibility for determining whether the claimant is disabled falls upon the Commissioner (and by extension the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also*

*Stuckey v. Sullivan*, 881 F.2d 506 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Delgado v. Bowen*, 782 F.2d 79, 81 (7th Cir. 1986) (per curiam).

However, the ALJ is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not elect to discuss only the evidence that favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id.; see also Young*, 957 F.2d at 393. The written decision must provide a "logical bridge from the evidence to the conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001)(quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Specific reasons are required so that the reviewing court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, instead, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

## IV.

Plaintiff brings two challenges to the ALJ's determination that he was not disabled from November 1, 1997 through December 31, 2002 (Pl.'s Mem. at 1). *First*, he argues that the ALJ failed to comply with SSR 96-3p and SSR 96-7p when she held that the plaintiff had no severe impairment. Plaintiff argues that the ALJ based her decision

11

solely on objective medical evidence, and failed to consider the testimony of plaintiff and his wife (*Id.* at 1). Plaintiff argues further that the ALJ failed to consider all medical evidence, particularly the effect of the plaintiff's diabetes in combination with his obesity, which can be determined a severe impairment when alone or in combination with other physical or mental impairments (*Id.* at 10-11 (citing SSR 02-1p)). *Second*, he argues that the ALJ erred by considering the post-hearing medical evidence without the aid of a medical expert (*Id.* at 13-15).

In response, the Commissioner argues that (1) there is substantial evidence, including physician opinions, supporting the ALJ's finding that the plaintiff was not severely impaired during the period in question; and, (2) the ALJ explicitly addressed both the plaintiff's and his wife's testimony (Def.'s Resp. at 7). The Commissioner further argues that the ALJ was not required to hold a second hearing to have the medical expert examine post-hearing evidence, because the medical expert explained to the ALJ what she should look for in this evidence and the ALJ was able to do so. (*Id.* at 13-14).

We consider, and reject, each of plaintiff's argument in turn.

## A.

The plaintiff claims that the ALJ violated SSR 96-7p by failing to consider the testimony of plaintiff and his wife without making an explicit credibility determination (Pl.'s Mem. 10). The plaintiff argues that the ALJ erroneously placed undue reliance upon the medical evidence (Pl.'s Mem. at 10).

SSR 96-7b states, in relevant part:

> No symptoms or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints appear to be, unless there are

12

> medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms. (SSR 96-7p, *1)
>
> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. *Id.*
>
> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id.* at *2.
>
> Under the regulations, an individual's own statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled. *Id.*

A credibility finding "must be grounded in the evidence and articulated in the determination or decision" of the ALJ. SSR 96-7p *4. The ALJ must specify the reasons for her findings so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003).

Plaintiff and his wife testified that plaintiff experienced numbness in his legs, trouble with his vision and hearing, and uncontrolled diabetes prior to the last insured date of December 31, 2002 (R. 21, 27-28). However, under SSR 96-7b, an individual's statement about his symptoms is not enough evidence to establish a severe impairment. In this case, the ALJ determined that while that testimony was consistent with medical

13

records since 2005, it was not supported by the medical the evidence prior to December 31, 2002 (R. 14).

Plaintiff sought little treatment before December 31, 2002. In December 1997, one month after the alleged onset date, the plaintiff reported to his doctor that he had no complaints (R. 283). The medical record shows that the plaintiff complained of headaches once in 1998 and was assessed as having fatigue in 2000 (R. 278, 285). There is only one report of right arm pain, and one mention of tingling in his fingers before December 31, 2002, his last date insured (R. 282). These handful of disparate and unrepeated complaints over a several-year period provided substantial evidence for the ALJ's decision to place more weight on the medical evidence than on the testimony of plaintiff and his wife. Plaintiff's failure to seek medical treatment for alleged symptoms supports the ALJ's determination because "the individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)(finding that a failure to seek medical treatment provides support for an ALJ's credibility finding). That is particularly true here, where during their 2007 testimony, plaintiff and his wife attempted to recount his condition five to ten years earlier. The ALJ was entitled to credit the statements in the contemporaneous medical records over plaintiff's five to ten year memory of what occurred.

The ALJ also concluded from the medical evidence that while plaintiff had suffered from diabetes since 1991, there were no significant complications from the illness on or prior to the last insured date (R. 14). The medical records prior to 2003 reveal no complaints or diagnoses of vision problems or motor weakness. Indeed, during

14

a December 2003 checkup, one year after the last insured date, plaintiff had a normal gait, motor exam and sensory exam, and no blurred vision (R. 14, 15, 299-300). There is no evidence in the medical records of vision problems until 2007 (R. 246). The ALJ found that the plaintiff did not complain of numbness in his feet until August 2005; and did not complain of burning pain in his feet until May 2006.

In sum, the ALJ compared the Plaintiff's description of symptoms to the medical evidence, and engaged in a thorough discussion of those symptoms in concluding that they emerged only after the relevant time period (R. 14, 15). The ALJ thus provided a logical bridge from this evidence to her decision to credit the medical evidence over the testimony of plaintiff and his wife. *Zurawski*, 245 F.3d at 887. There is substantial evidence to support that conclusion. *Dray v. R.R. Retirement Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993)(defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

## B.

Step 2 requires more than the identification of a condition, such as diabetes; it requires an ALJ to decide whether the condition caused a severe impairment creating significant limitations in his ability to do basic work activities. SSR 96-7p *3. SSR 96-3 establishes the guidelines for determining a "severe" impairment:

> An impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities. (SSR 96-3p)
>
> Once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the

15

> objective medical and other evidence in determining
> whether the impairment or combination of impairments is
> severe. (SSR 96-3p)

> A determination that an individual's impairment(s) is not
> severe requires a careful evaluation of the medical findings
> that describe the impairment(s) (i.e., the objective medical
> evidence and any impairment-related symptoms), and an
> informed judgment about the limitations and restrictions
> the impairment(s) and related symptom(s) impose on the
> individual's physical and mental ability to do basic work
> activities. (SSR 96-3b)

An impairment is not severe "if medical evidence establishes only a slight abnormality or

a combination of slight abnormalities that would have no more than a minimal effect on

plaintiff's ability to perform basic work activities." 20 C.F.R. § 404.1525 (April 1,

2009).[2]

Plaintiff suggests that the severity step in Step 2 is a "*de minimis*" matter that is

"nothing more than an administrative convenience," which excludes only claimants who

have "slight abnormalities" (Pl.'s Mem. at 10 (quoting *McCullough v. Heckler*, 583 F.

Supp. 934 (D.C. Ill. 1984)). Plaintiff argues that signs of diabetes, hypertension and

obesity push him beyond the threshold of "slight abnormality" into "severity." *Id.* We

disagree. The Supreme Court has held that inclusion of a "severity threshold" is

consistent with the language of the statute and if "a claimant is unable to show that he has

a medically severe impairment, he is not eligible for disability benefits." *Bowen v.

Yuckert*, 482 U.S. 137 (1987). Thus, the presence of a condition or impairment is

necessary to a finding for a plaintiff at Step 2, but is not alone sufficient. A plaintiff must

---

[2]Basic work activities include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking." 20 C.F.R. § 404.1525 (April 1, 2009).

16

further show that the impairment met the severity standard. The ALJ correctly engaged in an analysis to determine whether plaintiff in this case met that standard.

In their testimony, plaintiff and his wife describe symptoms such as poor eyesight, difficulty walking and numbness in the legs (R. 21-26). SSR 96-3p directs the ALJ to conduct a "careful evaluation of the medical findings." The ALJ engaged in just such an evaluation, and found that during the period in question, plaintiff experienced only some "slight abnormalities" associated with diabetes, such as elevated glucose fasting levels, headaches, erectile dysfunction and fatigue (*see, e.g.,* R. 15, 278, 281-83, 285). Of these, the plaintiff complained of headaches and fatigue only once each during the relevant period and did not mention them during the hearing. The ALJ found that the medical evidence showed the plaintiff's impairments imposed no more than the most minimal limitations on his ability to engage in basic work-related activities (R. 15). There was substantial evidence to support that finding. *See Owens v. Heckler*, No. 84 C 6824, 1985 WL 1646, *6-7 (N.D.Ill. May 30, 1983) (to show a severe impairment, a claimant must demonstrate that the impairment is more than slight). The ALJ correctly used the medical evidence to determine that the plaintiff had only slight impairments and, therefore, was able to perform basic work activities.

The ALJ recognized that the plaintiff has had diabetes since 1991 (R. 14). However, the fact that plaintiff has a condition that can cause certain symptoms does not mean that the condition has caused those symptoms in a particular case. The ME in this case made that observation (R. 33), which also has been recognized in the case law. *See Schmidt v. Barnhard*, 395 F.3d 737, 746 (7th Cir. 2005). While diabetes may cause symptoms that significantly limit an individual's ability to do basic work activities,

17

plaintiff did not exhibit these particular symptoms during the relevant time period. The ALJ specifically found that the medical evidence did not indicate that plaintiff suffered from "any significant complications from diabetes at any time on or prior to the last insured date" (R. 14). That finding was supported by substantial evidence.

To be sure, the evidence shows that plaintiff ultimately experienced complications from diabetes, but only long after December 31, 2002. As the ME testified, evidence of severe impairment post-dating the date last insured does not support the proposition that the plaintiff was disabled on the date of last insured. *See Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (finding that evidence of current disability does not support the proposition of earlier disability).

Plaintiff also argues that the ALJ failed to consider whether the plaintiff's obesity and hypertension were severe impairments both standing alone, or in combination with his diabetes. Plaintiff notes that even if individual impairments are not "severe," the ALJ must consider the aggregate effect of ailments (Pl.'s Mem. at 11 (citing SSR 02-1p)). However, the plaintiff did not include obesity or hypertension in his DIB claim (R. 180). Furthermore, neither the plaintiff nor the medical experts indicated during testimony that the plaintiff's obesity resulted in any limitations. And, there is no medical evidence to support the proposition that plaintiff's weight or any hypertension caused or contributed to significant limitations on plaintiff's ability to perform basic work activities.

Finally, plaintiff argues that he experienced numbness in his legs preventing him from performing tasks unique to his job (Pl.'s Mem. at 11). If a plaintiff cannot perform his job because of the unique features of that work, then an ALJ cannot rule out the possibility that the impairment is in fact severe. *Salazar v. Barnhart*, 2004 WL 2966919

18

*5 (N.D. Ill. 2004). In this case, plaintiff and his wife say that plaintiff quit his job with the CTA because of impairments, but it appears that he retired voluntarily; there is no indication that the CTA forced this retirement due to inability to perform that job due to limitations (R. 21-22, 26). Moreover, there are no contemporaneous medical records that indicate the plaintiff complained about such limitations. Although plaintiff testified at the hearing that he experienced numbness in his legs, the medical evidence shows that the plaintiff did not experience numbness in his feet prior to December 31, 2002. The first mention of numbness was in August 2005 (R. 14, 23).

The ALJ followed the Social Security Administration's guideline in determining that the medical impairment was not severe. In our view, she exercised great care in her determination, considering all available medical evidence. *See* SSA POMS DI 24505.005(D) ("Great care should be exercised in applying the not severe impairment concept"). The ALJ did not err in determining that the plaintiff did not have a severe impairment, and thus ending her analysis at Step 2.

## C.

Plaintiff argues that the ALJ improperly "played doctor" when she failed to submit post-hearing medical evidence to the medical expert (Pl.'s Mem. at 13). The Seventh Circuit has cautioned ALJs not to succumb to the temptation to play doctor by making their own independent findings, because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990). However, when determining whether a plaintiff is disabled, "although [the Commissioner] consider[s] opinions from medical sources . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2).

An ALJ is "playing doctor" when she either rejects a doctor's medical conclusion without other evidence or draws medical conclusions herself without relying on medical advice. *Dixon v.* Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). The ALJ did neither of those things here. Instead, she used the advice provided by the medical expert during the hearing to evaluate the post-hearing evidence. In fact, the plaintiff's counsel specifically asked the medical expert, during the hearing, what the ALJ should look for in the new evidence when she received it (R. 33-34). Plaintiff's counsel did not ask to postpone the hearing while awaiting the post-hearing evidence to hold another hearing when the evidence was submitted; or to have the ALJ submit the evidence to an ME.

Plaintiff argues that this case is "strikingly similar" to *Williams v. Massanari*, 171 F. Supp. 2d 829, 834 (N.D. Ill. 2001), in which the ALJ was found to have "played doctor," because he interpreted post-hearing records without the opinion or assistance of a medical expert, after indicating that he would seek this advice upon receipt of the evidence. The court in *Williams* determined that the ALJ's decision to have a medical expert evaluate evidence at the trial created a presumption that an ME was necessary for post-hearing evidence as well. *Id.* The ALJ erred not in failing to seek advice, but because he did not "justify such an action and sufficiently articulate his assessment of the evidence to assure the Court that the ALJ considered the important evidence and to enable the Court to trace the path of the ALJ's reasoning." *Id.*

Unlike the ALJ in *Williams*, the ALJ in this case received advice from the medical expert regarding what she should look for in the post-hearing evidence. The ALJ has discretion to determine when she needs to recontact medical sources. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). "An ALJ is required to recontact medical

20

sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Id.* In her final decision, the ALJ articulated her assessment of post-hearing evidence based on the advice she received from the ME. We find no error in the ALJ's decision that she did not require further assistance of an ME.

## CONCLUSION

For the reasons set forth above, the Court directs the Clerk of the Court to enter judgment in favor of the Commissioner granting her motion for summary affirmance (doc. # 19). The Court denies the plaintiff's motion for summary reversal and/or remand (doc. # 22). This case is terminated.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: December 28, 2009**

21